IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**NEW HAMPSHIRE INSURANCE COMPANY**     **PLAINTIFF**

**VERSUS**     **CIVIL ACTION NO. 2:10cv108KS-MTP**

**TRIPLE S WELL SERVICE, INC., LANCE
ALEXANDER, and NANCY LOTT**     **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment [Doc. # 11] (June 24, 2010), filed on behalf of New Hampshire Insurance Company. The Court, having reviewed the motion, the responses, the pleadings and exhibits on file and being otherwise fully advised in the premises, finds that the summary judgment motion should be granted. The court specifically finds as follows:

## I. FACTS

On September 5, 2008 around midnight, Lance Alexander, an employee of Triple S Well Service Inc., was involved in a one car wreck in a Triple S company vehicle while driving Nancy Lott to McDonald's. Nancy Lott sustained serious injuries that resulted in the amputation of her leg. The parties do not dispute what happened the night of the accident. Alexander arrived home from work to the trailer he shared with Lott, his live-in girlfriend, around 5:30 p.m. Lott suggested they go to the Rusty Bucket, a local bar, and Lott invited Milton Whiddon, their neighbor, to come along. They decided to take the Triple S vehicle because it was larger than Alexander's own personal vehicle. They arrived at the bar between 7:30-8:30 p.m. and stayed

1

approximately two hours. While there, Alexander drank two to three beers. Lott and Alexander arrived home between 10:00 and 11:00 p.m. Approximately forty-five minutes later, Lott gave Alexander three Lortabs, but she testified that she was unsure if he took them right away. Lott then asked Alexander to drive her to McDonald's to get her some food. They again took the Triple S truck. On the ride to McDonald's, Lott, who had smoked marijuana and taken a Lortab earlier in the evening, passed out and slid to the floorboard. While Alexander was attempting to lift her back to the seat, the truck struck a tree. Following the accident, Forrest General Hospital tested Alexander for alcohol and drugs, and found: "509 ng/mL of benzodiazepines, 43 ng/mL of cannabinoids, 24,005 ng/mL of opiates, 840 ng/mL of propoxphene, and an ethanol serum level of .0665%." He was then diagnosed with "opiate intoxication."

Alexander worked for Triple S from September 2006 until December 2007, and was rehired August 27, 2008. When Alexander was promoted to "tool pusher" he was allowed 24-hour access to one of Triple S's trucks. He was allowed to travel to and from work in the truck, park it at his house overnight, and transport crew members in the truck. Triple S's written policies, including the Company Vehicle Operating Policy and the Employee Handbook (2005 and 2007), specifically forbade using the company vehicle 1) for personal use, 2) to transport passengers other than company employees, including family members or friends, 3) while under the influence of intoxicating beverages, 4) while using or consuming alcohol, illegal drugs, or prescription medication that may affect your ability to drive, or 5) while a mental or physical impairment causes the employee to be unable to drive safely. Both Alexander and Lott knew and understood these policies. However, Lott argues that Triple S knew of and informally allowed other uses of the company vehicles and that it was a commonly accepted practice for

employees to use the vehicles for personal uses, including getting food, running errands, and transporting their wives. Some Triple S employees, while working in Madison County made a trip in a company vehicle to a Philadelphia, Mississippi, casino, although Singley, Triple S's owner, testified that the trip was not authorized and the employees were reprimanded. Lott claims that Singley, when he rehired Alexander, knew that he had a Lortab prescription because of a staph infection on his nose. However, Triple S conducted a drug screening when Alexander was rehired and other random drug screenings of its employees throughout their employment. Alexander had never tested positive, including the test he was given two days before the accident. Finally, Lott claims that Triple S knew about a DUI ticket Alexander got in July 2008 when he was rehired. However, Lott provides no evidence that Triple S knew of the ticket, and, in fact, Alexander maintained his driver's license until he pleaded guilty to the DUI in October 2008, well after the accident in question.

Following the accident, Lott filed suit against Alexander and Triple S in the Circuit Court of Marion County alleging negligence against Alexander, negligent entrustment against Triple S, and gross negligence against both Alexander and Triple S. The Circuit Court granted Triple S's summary judgment finding that Lott failed to make out a *prima facie* case against it, and certified its judgment under MRCP 54(b). Lott did not timely appeal the decision, and so the judgment is final. The case against Alexander is still pending. New Hampshire, Triple S's insurer, has filed the instant action seeking a declaratory judgment that (1) Alexander is not an insured and is not afforded liability coverage under Triple S's policy; (2) New Hampshire owes no duty to indemnify Alexander under this policy for any judgment that Lott may get against him; and (3) New Hampshire owes no duty to defend Alexander in Lott's lawsuit. Mot. Summ. J. 3 [Doc. #

3

11]. The insurance policy's omnibus clause states: "1. Who Is An Insured? The following are 'insureds': (a) You for any covered 'auto'; ( b) Anyone else while **using with your permission** a covered 'auto' you own, hire, or borrow." (emphasis added). Lott has answered the complaint and opposes it. Triple S has answered and agrees with New Hampshire. Alexander has not answered.

## II. STANDARD OF REVIEW

Summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2)*; see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). To support a motion for summary judgment, "the moving party ... [has] the burden of showing the absence of a genuine issue as to any material fact." *Burleson v. Tex. Dept. of Criminal Justice,* 393 F.3d 577, 589 (5th Cir 2004). Material facts are those that "could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (internal citations omitted). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the court views all evidence "in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor." *Breen v. Texas A&M Univ*., 485 F.3d 325, 331 (5th Cir. 2007). If the movant satisfies its initial burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a

4

genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The nonmovant is not entitled to merely rest on his pleadings, but must set forth "specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). If the nonmovant responds and still "no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

## III. APPLICATION

In this diversity suit, the substantive law of Mississippi applies. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Mississippi has adopted a modified minor-deviation rule to determine whether an insurer is liable under an omnibus clause for an employee's negligent use of a company vehicle. *See Travelers Indem. Co., v. Watkins*, 209 So.2d 630, 634 (Miss. 1968). Under the minor deviation rule, a bailee is afforded the protection of the insurance policy unless the use by him is a gross deviation of the terms of the bailment. *Id.* at 633. In other words, an employee may still be covered by the omnibus clause even if he deviated from his employer's permitted use unless that deviation is gross. *Id.* In contrast, some states have adopted an initial-permission rule, also known as the "hell or high water" rule, under which "the employee need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is 'with permission' though that use may be for a purpose not contemplated by the insured when he departed with possession of the vehicle." *Employers Mut. Cas. Co. v. Poe*, 191 So.2d 541, 545 (Miss. 1966). Mississippi has adopted a rule that "lies between the initial-permission rule and the minor-deviation rule."

*Travelers*, 209 So.2d at 634. This liberal view of permitted use was adopted because of the "manifest public policy of this state as indicated in the Motor Vehicle Safety Responsibility Act and in the later Uninsured Motor Vehicle Act, both of which clearly indicate the legislative policy of protecting the public and providing insurance coverage where persons are insured on the highways of the state." *Id.*

The Court should consider three interrelated factors, time, place, and use limitations, when determining whether permission was granted. *Id.* at 634. Permission may be express or implied. *Id.* at 633. "If the use is the same as that generally authorized– in the case of an employee, personal use as distinguished from business use– and the time and place of use do not represent a gross deviation from that authorized, the driver is a permissive user and covered under the omnibus clause." *Id.* at 634. In determining whether a use was permitted, the Mississippi courts have considered whether the use could have been reasonably expected by the lender. For instance, in *Travelers*, an employer loaned a truck to an employee on a Saturday with instructions to leave the truck at his home and bring it back to work on Monday. *Id.* at 631. On Sunday the employee had an accident while driving the truck to a neighbor's house to pick up his wife. *Id.* Although this use was in direct contradiction to the employer's direction to "leave it at home, leave it in the yard there and bring it back Monday morning," the court concluded that an employer's insurance omnibus clause covered the accident because he did not leave the neighborhood and his use "could reasonably be contemplated by the lender." *Id.* at 631, 635. The court concluded: "Nunn's deviation was minor, a thing to be expected by the lender, and it did not, therefore, work a cancellation of the insurance coverage on the truck he was using." *Id.* at 635. Similarly, in *U.S. Fidelity & Guaranty Co. v. Bonner*, the court held that

an omnibus clause covered a loaned vehicle used on a personal errand despite a company policy prohibiting use for personal business. 467 So.2d 955, 957 (Miss. 1985). In this case, the employee had possession of the vehicle at all times for the purpose of picking up other employee "chicken catchers" and taking them to jobs in a five-county area. *Id.* The Court found that the employee's use of the vehicle to go one mile from home on a Friday night after work to help a friend get his car out of a ditch was foreseeable and only a minor deviation. *Id.* at 956-57.

An illegal use is not automatically a gross deviation; rather, the Mississippi Supreme Court has implied a permitted use even when that use violated the law. *See, e.g., International Serv. Ins. Co. v. Ballard*, 216 So.2d 535, 541 (Miss. 1968) (fact that borrower allowed unlicensed minor daughter to drive car unsupervised does not relieve owner's insurance policy of liability under omnibus clause). However, the only Mississippi case that the parties cite involving a claim against an insurer for coverage under an omnibus clause and finding a gross deviation from the permitted use is *Employers Mutual Casualty Co. v. Poe,* 191 So.2d 541 (Miss. 1966) in which the employee was drinking and driving in a borrowed company car. In this case, which was tried without a jury, an employee of an auto sales business was loaned a car from work when his own car would not start. *Id.* at 543. The employee was given permission to drive north two miles to his home and return the car to work the next day; instead he went twenty miles south of town to a friend's house and had an accident after leaving his friend's home. *Id.* at 546. His friend's wife testified that he was "very drunk" when he arrived and when he left her house, and the record showed that "he was so intoxicated that he did not know where he was at the time of the collision." *Id*. The Mississippi Supreme Court reversed the lower court's judgment for the injured party and entered judgment for the insurance company. *Id.* at 547. The

court noted that "it cannot be said reasonably that the employer could have possibly anticipated that Tucker would deviate from the explicit permission granted and engage upon a venture such as is presented here." *Id.* at 546-47. Additionally, there was no evidence that the employee had ever used a vehicle for purely personal reasons or that the employer knew the employee to be a "drinking man." *Id.* at 547.

"The seriousness of an employee's deviation is ordinarily a question of fact to be decided by the jury or trier of facts." *Bonner*, 467 So.2d at 957 (citing *Thomas v. Deviney Constr. Co.*, 458 So.2d 694 (Miss. 1984)) (overruling trial court's directed verdict because whether driver was first permittee and covered by omnibus clause was jury issue); *see also Martin v. Travelers Indem. Co.*, 450 F.2d 542, 549 (5th Cir. 1971) (determining that trial court did not err in allowing question of deviation to go to jury because "[l]ike the specificity of a prohibition on use, the seriousness of a borrower's deviation is a question of fact"). Plaintiff New Hampshire Insurance Company cites the *Poe* case above for the proposition that when there is "such a violent deviation" it cannot reasonably be said that the employer could have possibly anticipated the deviation, and the deviation is gross as a matter of law. *Poe*, 191 So.2d at 546-57.[1] The

---

[1]The other cited cases granting summary judgment involve injured parties raising claims of *respondeat superior* and negligent entrustment against employers who loaned company cars to employees. *See Benjamin v. Cornwell Well Service*, 836 So.2d 792 (Miss. 2002); *Garcia-Lopez v. Bellsouth Telecommunications, Inc.*, 2010 WL 1873042 (S.D. Miss. May 7, 2010). These cases brought against the employer ask whether the employee was within the scope of his employment or whether he had deviated, and whether he had resumed his business duties after his frolic. On the other hand, omnibus coverage cases ask whether the employee was within the scope of his permitted use, which may include personal use either expressly or impliedly, and by what measure (minor or gross) the actual use deviated from the permitted use. *See, e.g.. Travelers*, 209 So.2d at 631 (noting that underlying *respondeat superior* case finding employer not liable for employee's action outside scope of his employment had no effect in garnishment proceeding against employer's insurance company to determine if employee's use was merely a minor deviation from scope of permission and therefore covered under omnibus clause). With

8

Texas courts took a similar approach in *Coronado v. Employers Nat. Ins. Co.*, 596 S.W.2d 502, 503 (Tex. 1979), in which the court affirmed the trial judge's entry of a judgment notwithstanding the verdict in favor of the insurer. Although evidence showed that the employee's supervisor had seen the employee at a bar after work in the company truck twice and once had shared a beer with him there, the judge determined that an eight hour post-work drinking spree was a gross deviation as a matter of law. *Id.* at 506. The Court stated: "Some deviations would be so slight as to not raise a fact issue that the permission was revoked; other deviations of more significance would raise a fact issue for the fact-finder; while still other deviations might be so gross as to destroy the initial permission as a matter of law." *Id.* A similar position was advocated by Justice Smith of the Mississippi Supreme Court in his dissent in *Broadway v. Kelly Bros.*, 803 So.2d 115 (Miss. 2000) (Smith, J., dissenting). The Honorable Judge stated:

> The question of whether the employee was acting within the scope of his employment is a question of law for the court if there is no conflict in the facts. *Lovett Motor Co. v. Walley*, 217 Miss. 384, 390, 64 So.2d 370, 372 (1953). Where the employee's deviation is marked and unusual, the court may determine, as a matter of law, that the servant was not on his master's business at all, but on his own.

*Id.* at 1157-58 ¶ 11.

In this case, the express policies of Triple S Well Service undisputedly prohibit using a

---

that difference noted, the Mississippi Supreme Court has muddied the waters by using the *Travelers'* modified minor deviation rule in *respondeat superior* cases. *See, e.g., Broadway v. Kelley Contractors, Inc.*, 803 So.2d 1155, 1156 ¶ 2 (Miss. 2000) (finding that trial court erred in granting summary judgment because genuine issue existed whether employee had authority to set his own itinerary such that stopping by Sunday church in company vehicle on the way to a job site was within scope of employment).

company vehicle while intoxicated or physically or mentally impaired, or while consuming alcohol, illegal drugs or prescription medications that may affect their ability to drive, or for transporting persons other than company employees unless transporting that person is a business related necessity, including a specific prohibition on transporting family members and friends. Alexander and Lott were aware of these express limitations on his permitted use.

Lott instead argues that Triple S did not enforce the written policies and that there is a genuine issue of fact whether the actual use of the vehicle the night in question was impliedly permitted or merely a minor deviation from the implied permitted use. Alexander noted that it was commonly accepted practice to use the company trucks for personal matters like getting food and running errands. He noted that employees had driven Triple S vehicles from Madison County, Mississippi, to a casino in Philadelphia, Mississippi, to gamble on three or four occasions. He noted that it was common practice for employees to take their wives along as passengers. Lott also notes that Triple S rehired Alexander and trusted him with the vehicle knowing that he had a Lortab prescription and knowing that he had a DUI charge pending. Finally, Lott argues that the time and place factors support a finding that Alexander's use was a minor deviation because he had permission to keep the vehicle in his possession twenty four hours a day, seven days a week and Alexander was less than three miles from home at the time of the accident.

Even in light of this evidence and drawing all inferences in Lott's favor, the Court finds that Alexander's deviation was the type of violent deviation from the permitted use as found in *Poe*. While the time and place factors may weigh in favor of coverage by the omnibus clause, and a midnight trip to McDonald's by itself may be considered merely a minor deviation, the use

here was so far removed from the express use restrictions and so far removed from what Triple S could have reasonably anticipated that a reasonable juror could not possibly consider Alexander's use a minor deviation. It is simply beyond reason that an employer acquiesced to the use of a company vehicle by an employee suffering from "opiate intoxication." Triple S did not just implement written policies pertaining to drug and alcohol use, but conducted several drug tests, both on rehiring Alexander and throughout his employ, including a random drug test two days before the accident. Even if Singley knew about Alexander's Lortab prescription, it does not follow that Singley acquiesced in Alexander's use of the company vehicle while impaired from the effects of the drug. Further, Lott does not provide any evidence that Triple S knew of Alexander's ticket for DUI in July 2008. In contrast, New Hampshire provides uncontroverted evidence that Alexander maintained his driver's license until October 2008, a month after the accident in question, when he pleaded guilty to his DUI charge. Finally, Singley testified that the casino trip made by employees working in Madison County was unauthorized, and the supervisor involved in the casino trip was reprimanded. In conclusion, while a midnight trip to McDonald's with his girlfriend may have been a minor deviation, making the same trip after drinking in a bar and while suffering from opiate and other controlled substances intoxication is such a gross deviation from even the most generously implied scope of permission, that the court finds the omnibus clause inapplicable to this accident as a matter of law.

While the Court concludes that the state court judgment in the negligent entrustment case would most likely not preclude Lott from arguing that Triple S acquiesced to Alexander's actual use of the company vehicle such that the omnibus clause would cover his liability, the Court

11

need not address the issue of collateral estoppel given its determination on the issue of gross deviation set forth above.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment [Doc. #11] filed on behalf of New Hampshire Insurance Company is hereby **granted.** A separate declaratory judgment shall be entered herein in accordance with FED.R. CIV. P 58.

SO ORDERED AND ADJUDGED this the 13th day of September, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE